IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:03CR3090 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| LUIS ALBERTO ERENAS-LUNA, | ) | |
| a/k/a MIGUEL ANGEL | ) | |
| ONTIVEROS-MURILLO, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant, Luis Alberto Erenas-Luna, whose real name is Miguel Angel Ontiveros-Murillo, claims his Sixth Amendment rights were violated by the government's post-indictment delay in securing his arrest. He has therefore moved to dismiss the indictment filed against him on July 24, 2003. Filing 29. An evidentiary hearing was held on May 15, 2007,[1] and the parties have thoroughly briefed and argued the issues raised. At the close of the evidentiary hearing, the court granted the government leave to submit additional evidence concerning the present location of potential trial witnesses. That information has now been filed. Filing 44. The motion is therefore fully submitted. For the reasons discussed herein, I recommend that the motion to dismiss be denied.

---

[1]See <u>United States v. Anderson</u>, 621 F.2d 292, 294 (8th Cir. 1980)(reversing the trial court and holding that an evidentiary hearing was necessary where the defendant filed a motion to dismiss for post-indictment delay, but no evidentiary record was developed concerning the reason for the delay and any resulting prejudice).

FACTUAL FINDINGS

The testifying witnesses included the defendant, Miguel
Angel Ontiveros-Murillo (a/k/a Luis Alberto Erenas-Luna),
(hereinafter "defendant"), Grand Island Police Sergeant Clyde
Church ("Sergeant Church"), and FBI Special Agent Michael Wagoner
("Agent Wagoner").  Each provided credible testimony.  The
relevant facts are relatively straightforward and largely
undisputed.

The grand jury's indictment against the defendant was filed
under seal on July 24, 2003, (filing 1), and an arrest warrant
was issued by this court the same day.  The indictment charges
that between July 1, 2002 and July 22, 2003, the defendant "LUIS
ALBERTO ERENAS-LUNA, a/k/a MIGUEL ONTIVEROS-MURILLO," knowingly
and intentionally conspired with other persons to distribute and
possess with intent to distribute 500 or more grams of
methamphetamine in Nebraska and elsewhere.  Filing 1.

The defendant was not arrested on the warrant issued by this
court until July 3, 2006.  Ex. 4.  Defendant's arrest was
conducted by FBI officers in Mesa, Arizona.  A Rule 5 and
detention hearing was conducted by the United States District
Court for the District of Arizona on July 7, 2006.  The defendant
was ordered detained pending trial, and was committed to the
custody of the United States Marshal for transport to this
district.  See filing 3 (Rule 5 pleadings).  A detention hearing
was held in this court on July 20, 2006, and the defendant was
ordered detained pending trial.  Filing 9.

The defendant was not aware of the charges pending in this forum until his arrest on July 3, 2006.  He was not detained on those charges at any time between July 24, 2003 and July 3, 2006.

The defendant is a citizen of Mexico.  Prior to July 24, 2003, the defendant voluntarily returned to Mexico six times after being found in the United States by immigration authorities.  Ex. 2, p.2.  The defendant's first formal deportation occurred in September 2002.  He reentered the United States in February 2003 and was deported.  Ex. 3, p. 2.  The defendant was apprehended while reentering the United States on March 2, 2003 near Arivaca, Arizona, and he was again formally deported.  Filing 1, p.2.  The March 2003 deportation record identified the defendant as "ONTIVEROS-MURILLO, Miguel Angel" and listed "ERENAS-LUNA, LUIS" as an alias.  See ex. 1.

The defendant reentered the United States near Nogales, Arizona on March 15, 2003.  See ex. 2, p. 2.  He was contacted by law enforcement in Grand Island, Nebraska on April 10, 2003 and identified himself as Miguel Ontiveros.  The Grand Island police department later discovered that the defendant used the alias, Luis Erenas-Luna, and arrested him at his home in Grand Island on an outstanding Hall County arrest warrant for a person using that name.

The defendant's home was searched on April 10, 2003 pursuant to a warrant issued by the County Court of Hall County, Nebraska. Ex. 9.  Incriminating evidence of alleged drug use, methamphetamine manufacture, and illegal drug distribution was seized from the defendant's home.  The evidence seized during the search of defendant's home is the only physical evidence which will be offered at trial on this pending federal indictment.  In

3

accordance with the policy of the Grand Island Police Department, this evidence has been retained by that department and is available for the parties' inspection and use during the trial of this case.[2]

Since the defendant was an illegal alien, the Grand Island police contacted federal immigration authorities.  The defendant was transported to Hastings, Nebraska, held there for fifteen days, and then taken to Omaha for deportation.  He was deported to Mexico on April 21, 2003.  The defendant's April 2003 deportation record identified him as "ONTIVEROS-MURILLO, Miguel Angel" and listed "ERENAS Luna, Luis" as his alias.  See ex. 2.

In 2003 Investigator Rita Hemmer of the Grand Island Police Department was a member of the Tri-City Drug Task Force.  The Tri-City task force investigates drug-related crimes through the cooperative efforts of local, state, and federal law enforcement officers.  In early 2003 Investigator Hemmer was performing a major drug investigation under the filename "Traffic Jam." Defendant's alleged illegal drug activity was included within the Traffic Jam investigation.

On June 11, 2003 a confidential informant contacted Investigator Hemmer and stated the defendant had re-entered the United States and was currently staying at the home of Laura Salpas in Lincoln, Nebraska.  Investigator Hemmer forwarded this information to the Lincoln Drug Task Force which, in turn, conducted surveillance of the Salpas residence.  On June 27, 2003, the Lincoln Drug Task Force reported that a person matching the defendant's description was seen entering and leaving Salpas'

---

[2]Sergeant Church testified that he "assume[s]" the physical evidence is still in possession of law enforcement.

4

home.  See ex. 5.   There is no evidence that any law enforcement
officer contacted the person matching the defendant's description
in June of 2003 to confirm his identity, and there is no evidence
that federal immigration officers were notified of defendant's
possible reentry and presence in the United States.

Investigator Hemmer prepared and submitted a prosecution
report for indictment of the defendant in July of 2003.  The
defendant was indicted by a federal grand jury on July 24, 2003,
and an arrest warrant was issued.  Filing 1.  At the time of the
indictment, the Traffic Jam investigation, and the investigation
of the defendant, was still ongoing, (see e.g. ex. 6).  The
indictment and warrant for defendant's arrest were filed under
seal.  The United States Marshal promptly sent a copy of the
defendant's federal arrest warrant to the Grand Island Police
Department.  FBI agents located in Grand Island, including
Special Agent Will Schaefer who was a member of the Tri-City task
force, were also informed that an outstanding warrant existed for
defendant's arrest.

Arrest warrants can be forwarded by local law enforcement to
the FBI for entry into the National Crime Information Center
(NCIC) computer database.  The FBI's "Savannah Group"
periodically reviews recent and outstanding warrants in the NCIC,
and also attempts to locate defendants through "AutoTrack," a
public credit reporting service that maintains a ten- to fifteen-
year historical database of credit application information.
Information within the NCIC cannot be accessed by the general
public.  However, even when an indictment and arrest warrant are
filed with the court under seal, if the arrest warrant
information is entered into the NCIC system, it can be accessed

by law enforcement officers (including federal immigration
authorities) throughout the United States.

When the Grand Island Police Department received notice of
defendant's arrest warrant in 2003, it did not immediately
forward the information to the FBI for entry into the NCIC
database.  Pursuant to the police department's policy as it
existed in 2003, Grand Island police officers generally delayed
entering new arrest warrants into the NCIC system for
approximately thirty days.[3]  This delay was intended to afford
local task force members the opportunity to collect additional
evidence, seize assets, and execute the arrest warrant without
alerting other criminal suspects of the ongoing investigation.

However, the government offered no evidence of any efforts
made by law enforcement officers to locate the defendant in
either Grand Island or Lincoln, Nebraska within the thirty-day
period following defendant's indictment.  An anonymous caller
contacted Investigator Hemmer in late-September 2003 and stated
the defendant was in Grand Island "about a month ago," but was
then in Mexico.  Ex. 6.  He was also reported to have
"associates" in Grand Island who resided at a specifically named
trailer park there and drove vehicles with Arizona plates.  Ex.
6.  There is no evidence substantiating or refuting the veracity
of this tip, and the defendant denies being present in Nebraska
at any time between his April 2003 deportation and July 2006.

As of April 2003 the Tri-City task force was aware that
defendant had contacts in Arizona.  When the defendant's home was

---

[3]This policy was changed in 2006.  Arrest warrants are now
forwarded to the FBI for entry into the NCIC database immediately
upon receipt by the police department.

searched on April 10, 2003, "miscellaneous paperwork" containing both Nebraska and Phoenix, Arizona names, street addresses, and telephone numbers was seized.  See exs. 7 (Task Force Continuation Report), 8 (copies of documents and money seized), & 9 (warrant return inventory).  However, no attempt was ever made by any law enforcement officer to locate the defendant through the Arizona contacts identified in the documents seized from his home.

Even after the thirty-day waiting period had ended, and despite the fact that the defendant had not been arrested, no local, state, or federal law enforcement officer then entered the defendant's arrest warrant into the NCIC system.  Although there was testimony that Special Agent Schaefer customarily did this, there apparently was no established protocol or assignment for this task.

In December 2003 or January 2004 Investigator Hemmer obtained different employment, and her caseload was transferred to Investigator Tony Keiper of the Grand Island Police Department.  By then, the Traffic Jam investigation was coming to a close.  Investigator Keiper apparently did not thoroughly review the Traffic Jam file.  He likewise failed to assure that the defendant's arrest warrant was forwarded to the FBI for entry into the NCIC database.

The defendant was caught entering the United States near Lukeville, Arizona on March 15, 2004.  Ex. 3.  As is routinely done, an NCIC check was performed by the Border Patrol.  See ex. 3, p.1.  However, since the defendant's arrest warrant was not yet entered into the NCIC system, the border patrol agent was not aware of the warrant.  The defendant was deported to Mexico.  Ex.

7

3.  His March 2004 deportation record identified him as "Miguel Angel Ontiveros-Murillo."  See ex. 3.

The defendant was again found in Arizona by immigration authorities in December 2004.  Under the protocol followed by immigration officers at that time, NCIC checks were customarily performed by immigration officers who detained undocumented aliens to determine if the detainee was the subject of an outstanding warrant.  However, since the defendant's arrest warrant was not in the NCIC database, he was permitted to voluntarily return to Mexico.

Investigator Keiper left his employment with the Grand Island Police Department in early 2006.  Though the Traffic Jam file had been assigned to him for over two years, he never made any attempt to locate the defendant to facilitate his arrest.

There was apparently never any supervisory review of this investigative file to determine the defendant's case status or whereabouts, either at regular management intervals or at the times it was reassigned.

During Special Agent Schaefer' preparation for leaving the FBI's Grand Island office effective May 2006, his open files, including the Traffic Jam file, were transferred to FBI Special Agent Michael Wagoner.  The Traffic Jam investigation and prosecution was then basically complete except for any remaining fugitives.  In late February 2006, Special Agent Wagoner reviewed the fugitive listing and checked to assure that each name was entered in the NCIC.  He discovered that the defendant's name had never been included in that database and promptly corrected that oversight.  He also secured an AutoTrack search by the Savannah

8

Group.  However, no credit applications in the defendant's name
and known alias were listed in AutoTrack on May 29, 2006.
Defendant's name and alias, as well and several variations of
those names, were again searched on AutoTrack on May 14, 2007,
the day prior to the evidentiary hearing on this motion to
dismiss.  Nothing was found.

In June of 2006 the defendant was arrested in Chandler,
Arizona and charged with four felony drug counts.  The Arizona
arrest warrant identified the defendant as "Luis Erenas-Luna."
Arizona authorities ran an NCIC check, discovered the outstanding
Nebraska federal warrant for defendant's arrest, and notified the
FBI's Omaha office that the defendant was in Arizona custody.
FBI agents spoke with Arizona law enforcement authorities to
assure that they were aware of the federal arrest warrant and to
request that they not release the defendant if he were permitted
to post a bond in the state court.  Despite these efforts, the
defendant was permitted to bond out of jail.  He was scheduled to
appear before the Arizona state court on July 3, 2006.

The Omaha office of the FBI contacted the FBI in Phoenix and
asked that agents attend the Arizona state court hearing
scheduled for July 3, 2006, and that they arrest the defendant if
he appeared.  The defendant did appear at the hearing, and he was
placed under arrest by FBI officers.  During transport to the
United States' Marshal's Office in Phoenix, the defendant stated
that had he known of the federal warrant, he would have gone to
Mexico instead of appearing at the courthouse.  Ex. 4.

The witnesses who are likely to testify or could provide
testimony include Vicente Alonso Isiordia Jimenez (a/k/a

9

"Mechanico"),[4] Elias Zamarippa (a/k/a "Homeboy"),[5] Oscar Beltran,[6] Luis Carlos Orona,[7] Vicki L. Matzdorf,[8] Pablo Favela Corral,[8] and Jesus Manuel Rodriguez Martinez (a/k/a "Chewy").[9]  Jimenez, Zamarippa, Beltran, Corral, and Martinez are currently in the custody of the Bureau of Prisons.  Corral is unwilling to cooperate with the government, but whether he would be helpful to the defendant is unknown.  Matzdorf is currently on supervised release.  Though Orona's precise current location is unknown, (see filing 44), he was originally sentenced on May 14, 2003 and was sentenced to seven years (eighty-four months) in prison.  See USA v. Orona, 4:02CR03223, filings 36 & 48.  No evidence was offered concerning the information any of these witnesses could offer at defendant's trial.  There is also no specific evidence that any of these witnesses is unable to accurately remember relevant information.  There is also no evidence that those who "cooperated" with the government were asked about this defendant's whereabouts at any time relevant to the issues raised in this motion.

Finally, during the course of the Traffic Jam investigation, a woman known as "Lucero" was identified as defendant's associate.  See ex. 6.  No evidence was offered concerning her real name, current whereabouts, or the content of any information she may have.

---

[4]See USA v. Jimenez, 4:04CR03021.

[5]See USA v. Zamarripa, 4:04CR03041.

[6]See USA v. Beltran, 4:02CR03165.

[7]See USA v. Orona, 4:02CR03223.

[8]See USA v. Favela-Corral and Matzdorf, 4:02CR03121.

[9]See USA v. Martinez, 4:05CR03051.

10

LEGAL ANALYSIS

The Sixth Amendment to the Constitution of the United States provides that in all criminal prosecutions the accused has the right to a speedy trial.  The defendant claims the government violated this Sixth Amendment right by failing to promptly arrest him after the indictment was filed.  U.S. v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002).

A defendant who claims an indictment must be dismissed because his speedy trial rights were violated must allege "that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  Doggett v. United States, 505 U.S. 647 (1992).  This generally occurs if the delay between indictment and arrest is at least one year.  Id. at 652 n. 1; United States v. Brown, 325 F.3d 1032, 1034 (8th Cir. 2003).  If the defendant makes this threshold showing, the court must conduct the speedy trial analysis set forth in Barker v. Wingo, 407 U.S. 514 (1972).

Under Barker, a Sixth Amendment speedy trial claim is assessed by balancing:  (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant.  Id. at 530; U.S. v. Shepard,  462 F.3d 847, 864 (8th Cir. 2006).  None of these factors, taken by itself, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  Id. at 533.

    1.   <u>Threshold Showing of Presumptive Prejudice</u>.

    The delay between indictment and defendant's arrest was nearly three years.  There is no dispute that such a delay meets the threshold of "presumptively prejudicial," thus triggering the court's obligation to conduct a <u>Barker</u> speedy trial analysis. <u>U.S. v. Richards</u>, 707 F.2d 995, 997 (8th Cir. 1983)(holding that a delay of 35 months between indictment and arrest was "presumptively prejudicial" and properly triggered a <u>Barker</u> inquiry).

    2.   <u>The Barker Factors</u>.

    a.   Length of Delay.

    If the defendant makes a showing that post-indictment delay was presumptively prejudicial, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." <u>Doggett</u>, 505 U.S. at 652.  In this case the post-indictment delay substantially exceeded a year.  The three-year time period between indictment and arrest weighs in favor of the defendant.  <u>U.S. v. Walker</u>, 92 F.3d 714, 717 (8th Cir. 1996) (holding 37-month post-indictment delay weighed in defendant's favor).

    However, this factor alone does not support a claim that defendant's Sixth Amendment rights were violated.  As exemplified by <u>Barker</u>, depending on the particular facts of a case, far greater delays have been held to not violate a defendant's speedy trial rights.  <u>Barker</u>, 407 U.S. at 534 (holding the defendant's speedy trial rights were not violated although the five-year

delay between arrest and trial, only seven months of which were
attributable to an unavailable witness and most of which were
attributable to the government, was extraordinary, the defendant
failed to show actual prejudice and acquiesced in the
government's requests for continuances).  See also Reynolds v.
Leapley, 52 F.3d 762, 764 (8th Cir. 1995)(holding nine-year post-
indictment delay did not violate defendant's speedy trial rights
where the defendant fled the jurisdiction to avoid arrest, became
incarcerated elsewhere, did not immediately demand a speedy
trial, and failed to show actual prejudice); U.S. v. Agreda, 612
F. Supp. 153 (E.D.N.Y. 1985)(holding a seven-year delay between
indictment and arrest did not violate defendant's speedy trial
rights where the government attempted to locate the defendant,
defendant resided in Venezuela, and no actual prejudice was
shown).  A three-year post-indictment is not considered "so
inordinately lengthy that it requires the severe remedy
of an automatic dismissal." Richards, 707 F.2d at 997.


        b.   Responsibility for Delay.


    The second Barker factor requires the court to determine why
the delay occurred.  "[T]he prosecution bears the burden of
explaining delay in bringing an accused to trial."  McNeely v.
Blanas, 336 F.3d 822, 827 (9th Cir. 2003)(collecting cases).  The
court must determine if the government "discharge[d] its
'constitutional duty to make a diligent, good-faith effort to
bring [the defendant to trial].'"  Moore v. Arizona, 414 U.S. 25,
26 (1973).


    A defendant is not permitted to benefit from delay caused by
his own conduct.  Richards, 707 F.2d 995, 997 (8th Cir.
1983)(although 35-month post-indictment delay was presumptively

prejudicial, dismissal was improper where the government had tried to locate the defendant, but the defendant was hiding); United States v. Weber, 479 F.2d 331, 333 (8th Cir. 1973)(holding 21-month post-indictment delay did not weigh against the government where the defendant "purposefully obstruct[ed] justice by becoming a fugitive").

Conversely, delay attributable to the government weighs against the government in the Barker analysis. "The government's intentional delay in locating a defendant will weigh heavily against it. . . . Negligence, on the other hand, will be weighted less heavily against the government but is still a considerable factor in the weighing process." Walker, 92 F.3d at 717 (citing Barker, 407 U.S. at 531).

The government argues that the defendant used an alias, was located outside Nebraska during the entire three-year period between indictment and arrest, and resided outside the United States during much of that time.[10] However, defendant used the alias long before he was indicted in July 2003, and he did not adopt or change that alias after being indicted. Even assuming he was not in Nebraska during the entire three-year period, the defendant was in the United States several times during that time frame, and he did not leave the United States of his own accord. He obviously wanted to be in the United States, as he illegally entered and re-entered the country. He was in the government's custody at least twice, and on both occasions, was deported by the government to Mexico. There is no evidence the defendant

_____

[10] The evidence that the defendant was in Mexico during most of the three-year period is not strong. The defendant answered "I think so" to the prosecutor's questions concerning whether he was then in Mexico.

knew a federal indictment was pending against him, and there is no evidence he left the country or used an alias to avoid being found and arrested on the charges pending in this forum.

There is likewise no evidence the government purposefully delayed arresting the defendant to gain a tactical advantage at trial.  The evidence clearly establishes that the defendant "dropped through the cracks" due to the government's negligence. After securing an indictment, the government's agents and officers simply failed to look for the defendant or file his name and alias in the NCIC database and, with time and turnover of personnel, forgot about him.  This database was searched on at least two occasions in 2004 when the defendant was in the custody of border patrol officials, but since nothing had been reported, the defendant was returned to Mexico.  That the government's negligence in failing to enter defendant's name into the NCIC caused the delay in his arrest is clearly demonstrated by the fact that he was arrested less than five months after the NCIC entry was finally made.

The government freely admitted at the hearing that it had "dropped the ball" in failing to timely arrest the defendant; that characterization may be charitable.  The failure to make the NCIC entry was merely one of several troubling omissions.  No gainful purpose would be served by further belaboring them here, as the task force has changed its procedures such that hopefully there will be no occasion to revisit them.  Suffice it to say for nearly three years several assigned law enforcement officers did nothing to locate this defendant.  At best, they assumed someone was doing something to find the defendant when, in reality, no one did anything.

While personnel turnover and shortages were blamed for the government's lapses, in fact it was a lack of supervision and management that resulted in the failure to discover the earlier error.  From the assigned investigators, to their supervisors, to the other members of the task force, there were numerous instances of failures to establish protocols, failures to directly assign tasks, failures to supervise the doing of tasks, failures to check that tasks had been done, and failures to review the case file.  The evidence firmly establishes that had adequate management measures been in place, the initial error either would not have occurred or would not have gone undiscovered as long as it did.

The government was clearly seriously negligent.  The second factor of the <u>Barker</u> balancing test weighs decidedly against the government.

c.   Assertion of Speedy Trial Rights.

The defendant's assertion of his right to a speedy trial, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." <u>Barker</u>, 407 U.S. at 531-32.  However, a defendant cannot invoke his right to a speedy trial until he knows criminal charges have been filed. Where the defendant is unaware of the indictment, he cannot "be taxed for invoking his speedy trial right only after his arrest." <u>Doggett</u>, 505 U.S. at 654.

The court's record confirms that the indictment against the defendant was filed under seal.  When law enforcement investigations are ongoing and evidence is still being gathered, sealed indictments serve the government's legitimate law

16

enforcement and prosecutorial purposes.  U.S. v. Mitchell, 769
F.2d 1544, 1547 (11th Cir. 1985).  Since the indictment was filed
under seal, neither the defendant nor any other member of the
general public could have checked the court's PACER system to
determine if he had been indicted.  There is no evidence the
defendant knew, should have known, or could have known of the
indictment filed against him on July 24, 2003.  His failure to
invoke his right to a speedy trial after the indictment and before
his arrest does not weigh against him under Barker.  Under the
facts of this case, the third Barker factor is neutral.

     d.    Prejudice to the Defendant.

    The fourth Barker factor is whether the defendant was
prejudiced by the government's post-indictment delay in securing
his arrest.  Shepard, 462 F.3d at 864.  This factor is "evaluated
'in the light of the interests of defendants which the speedy
trial right was designed to protect . . . (i) to prevent
oppressive pretrial incarceration; (ii) to minimize anxiety and
concern of the accused; and (iii) to limit the possibility that
the defense will be impaired . . . the most serious is the last.'"
Shepard, 462 F.3d at 864 (quoting Barker, 407 U.S. at 532).

    The defendant bears the burden of proving the prejudice
factor of the Barker analysis.  See Brown, 325 F.3d at 1035 (8th
Cir. 2003).  The extent to which a defendant must prove prejudice
from a delay is directly related to the government's
reasonableness in its pursuit of the defendant and its culpability
for failing to promptly secure his arrest.  Brown, 325 F.3d at
1034.  If the government acted reasonably in pursuing and securing
defendant's arrest, then the defendant must show the delay
actually prejudiced him.  Doggett, 505 U.S. at 656; Brown, 325

17

F.3d at 1035.  General allegations that witness memories have
faded, or that witnesses or items of physical evidence have been
lost are insufficient to prove actual prejudice.  U.S. v. Marion,
404 U.S. 307, 326 (1971); U.S. v. Jackson, 446 F.3d 847, 852 (8th
Cir. 2006).   At the other extreme, the government's act of
intentionally delaying the defendant's arrest to gain a tactical
advantage at trial presents an "overwhelming case for dismissal."
Doggett, 505 U.S. at 656.

Where, as in this case, the government was negligent, the
court's ability to tolerate such negligence is inversely related
to the amount of delay caused by the negligent conduct.  "[A]s the
delay increases, the specificity with which prejudice must appear,
diminishes."  U.S. v. Naftalin, 534 F.2d 770, 773 (8th Cir. 1976).
Prejudice may be presumed in some cases.  The defendant's ability
to rest on a showing of presumed prejudice increases with the
length of the post-indictment delay.  Doggett, 505 U.S. at 657.
"[N]egligence unaccompanied by particularized trial prejudice must
have lasted longer than negligence demonstrably causing such
prejudice."  Doggett, 505 U.S. at 657.[11]  However, if the presumed
prejudice can be persuasively rebutted, the defendant is not
entitled to dismissal of the indictment.  Doggett, 505 U.S. at
658.

The defendant was neither incarcerated on the pending federal
charges, nor aware the federal indictment was pending, during the

---

[11]   Noticeably absent from courts' discussions of the
"prejudice" factor is any intimation that the *number* of negligent
acts or omissions has any bearing on the issue.  While in this
case, as noted above, there were several omissions which
culminated in the three-year delay, that is not the relevant
inquiry.  In short, ten negligent, delay-causing, non-prejudicial
acts do not, under present law, accumulate to form "trial
prejudice" in this context.

three-year period between his July 24, 2003 indictment and his
July 3, 2006 arrest.  He cannot prove prejudice related to
oppressive pretrial incarceration or pretrial anxiety.  Therefore,
to prove prejudice under the fourth <u>Barker</u> factor, the defendant
must prove his defense was impaired by the delay attributable to
the government.  <u>Shepard</u>, 462 F.3d at 864.

A claim of trial prejudice "may arise if a key defense
witness or valuable evidence is lost, . . . if the defendant is
unable credibly to reconstruct the events of the day of the
offense, . . . or if the personal recollections of the government
or defense witnesses are impaired, . . . because if any of these
events occur the reliability of the proceedings for the purpose of
determining guilt becomes suspect."  <u>U.S. v. Feinberg</u>, 383 F.2d
60, 65-66 (2d Cir. 1967)(internal citations omitted).  The
defendant has not identified any missing or unavailable witnesses
who would likely have provided exculpatory or helpful evidence at
trial, nor produced evidence that any witness' memory of relevant
facts has faded.  The physical evidence remains available for
defendant's review and use at trial, as would the statements of
the government's witnesses.  While the defendant had difficulty
remembering the dates of his illegal entries, deportations, and
reentries into the country while testifying at the evidentiary
hearing, there is no evidence that he is unable to recall the
events relevant to the indictment or that he will be unable to
assist in the defense of his case.  The defendant has made no
showing of actual prejudice arising from post-indictment delay.

The defendant claims the delay in this case was so excessive
that it "presumptively compromise[d] the reliability of a trial in
ways that neither party can prove or, for that matter, identify."
Filing 38 (defendant's brief), p. 10 (quoting <u>Doggett</u>, 505 U.S. at

655).  The defendant acknowledges that the three-year delay in his
case is not equal to the delay in <u>Doggett</u>, but claims the case
should nonetheless be dismissed because "all of the other factors
substantially weigh in his favor."

Under the facts presented, the first <u>Barker</u> factor (length of
delay) and the fourth factor (prejudice) essentially merge because
the only specific evidence offered on either of these factors is
the length of post-indictment delay attributable to the
government.  The third factor weighs in neither party's direction
since the defendant was not able to assert his right to a speedy
trial before he knew an indictment was pending.  Accordingly, the
<u>Barker</u> analysis applicable to this case requires balancing the
extent of the government's negligence and any resulting presumed
prejudice to the defendant's trial preparation and defense.

When the government has failed to act in a reasonably
diligent manner in arresting the defendant, the court must
determine what portion of the post-indictment delay is
attributable to government's negligence and whether this negligent
delay is of such duration that prejudice to the defendant should
be presumed.  <u>Doggett</u>, 505 U.S. at 657-658 (holding that the
government was responsible for 6 years of the 8 1/2-year delay
between defendant's indictment and arrest, and this six-year delay
was presumptively prejudicial).

The defendant testified that he never entered Nebraska
between the time of his indictment (July 24, 2003) and his arrest
(July 3, 2006).  Accordingly, even had local law enforcement
looked for him in Grand Island or Lincoln, the defendant would not
have been found there.  Therefore, although local law enforcement
negligently failed to search for the defendant in Nebraska, this

20

specific failure did not cause any delay.  Whether follow-up on
the tip regarding defendant's presence in Lincoln, Nebraska in
June of 2003 would have allowed law enforcement to find him after
his indictment a month later is unknown.  The evidence establishes
that any search of AutoTrack records would not have revealed the
defendant's whereabouts, and any claim that the defendant could
have been found through his Arizona contacts is also speculative.

However, the evidence establishes that the defendant was not
arrested when he was deported in March of 2004, or when he was
apprehended by the Border Patrol and allowed to leave voluntarily
in December 2004, solely because the defendant's arrest warrant
had not been promptly entered into the NCIC database.  In other
words, giving the government the benefit of presuming defendant
would not have been arrested between July 2003 and his removal the
following March, the government's negligence delayed the
defendant's arrest a minimum of at least seventeen months (from
December 2004 until July 2006), and more likely twenty-eight
months (from March 2004 until July 2006).

The defendant argues that under Moore v. Arizona, 414 U.S. 25
(1973) and Richards, this delay is sufficient to support a
presumption of prejudice under the fourth Barker factor.  See
filing 38, p. 11.  Moore and Richards do not resolve the issues
presented under the facts of this case.  In Moore, the defendant
was charged with an Arizona murder while serving a California
sentence.  His demand for extradition to Arizona for a prompt
trial was ignored, and he waited almost three years to be tried.
The defendant's motion to dismiss for post-indictment delay was
denied by the trial court because the defendant had failed to
prove any trial prejudice created by the delay.  Moore held that
"prejudice to a defendant caused by delay in bringing him to trial

21

is not confined to the possible prejudice to his defense in those
proceedings," but includes circumstances "wholly aside from
possible prejudice to a defense on the merits," such as pretrial
anxiety, loss of liberty, and public ridicule.  Since the trial
judge had failed to fully explore the issue of prejudice, the case
was reversed and remanded for further assessment under <u>Barker</u> and
the Sixth Amendment.  Accordingly, <u>Moore</u> addressed sources of
prejudice, e.g. pretrial anxiety and incarceration, not raised
under the facts of this case.  It did not hold that a three-year
delay presumptively prejudices the defendant's ability to defend
himself at trial.

   <u>Richards</u> likewise fails to support the defendant's presumed
prejudice claim.  <u>Richards</u> held that a 35-month delay between
indictment and arrest was "presumptively prejudicial" so as to
trigger further inquiry into the <u>Barker</u> factors, including the
issue of prejudice.  <u>Richards</u>, 707 F.2d at 997.  This finding of
"presumptive prejudice does not necessarily indicate a statistical
probability of prejudice; it simply marks the point at which
courts deem the delay unreasonable enough to trigger the
four-factor enquiry." <u>Brown</u>, 325 F.3d at 1034-35 (quoting
<u>Doggett</u>, 505 U.S. at 652 n. 1).  See also <u>U.S. v. Aldaco</u>, 477 F.3d
1008, 1019 (8th Cir. 2007)("[T]he delay of approximately three and
a half years from date of arrest to trial is presumptively
prejudicial delay which warrants a review of the four relevant
inquiries into Aldaco's Sixth Amendment violation claim.").  See
also <u>Brown</u>, 325 F.3d at 1034-35 (rejecting the defendant's claim
that since his arrest was delayed by three years, prejudice was
presumed and dismissal was required where the government was not
negligent in failing to pursue the charges and no actual prejudice
was shown).

22

Though no clear line of demarcation exists, courts have generally found presumed prejudice for purposes of the fourth Barker factor only in cases in which the post-indictment delay lasted at least five years.[12]  U.S. v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir. 2003)(collecting cases).  In Serna-Villarreal,

_____

[12] Of note, the defendant has been charged with illegal drug activities over a period beginning on July 1, 2002 and extending to July 22, 2003.  Federal drug conspiracy crimes are subject to the five-year statute of limitations found in 18 U.S.C. § 3282.  U.S. v. Grimmett, 236 F.3d 452, 453 (8th Cir. 2001).  Thus, if defendant had not been charged to date (or even if this indictment were dismissed without prejudice), defendant could yet be charged with the same offense.

Regarding *pre*-indictment delay, the Supreme Court has stated:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time . . . .

U.S. v. Marion, 404 U.S. 307, 323 (1971)(quoting Toussie v. United States, 397 U.S. 112, 114-115 (1970).  Marion held that any presumed prejudice arising from a 38-month delay in charging a defendant cannot justify dismissal for pre-indictment delay in violation of the Fifth Amendment.  Marion reasoned:

> Appellees rely solely on the real possibility of prejudice inherent in any extended delay:  that memories will dim, witnesses become inaccessible, and evidence be lost.  In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

Marion, 404 U.S. at 326.  Ironically, such "bright-line" reasoning has not been applied in the post-indictment delay context, however.

the government negligently failed to diligently pursue a defendant from indictment to arrest for a period of three years and nine months.  The defendant failed to prove actual prejudice and relied on presumed prejudice in claiming the indictment must be dismissed for violation of his speedy trial rights.  Serna-Villarreal held that the government's three-year and nine-month delay in arresting the defendant did not warrant a finding of presumed prejudice. Since there was no indication that either the government's negligence or the resulting length of the delay had adversely affected the evidence so as to undermine the fairness of a trial, the defendant's motion to dismiss under Barker was denied. Serna-Villarreal, 352 F.3d at 232.

Having evaluated the credible evidence and the parties' arguments, I find that dismissal of the indictment against the defendant is not warranted under Barker and the Sixth Amendment. The defendant has failed to prove any actual prejudice, and the delay attributable to the government's negligence, even if assumed to include the full three years between indictment and arrest, is insufficient to justify a presumption that the defendant's right to a fair trial has been jeopardized.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Lyle E. Strom, United States Senior District Judge, pursuant to 28 U.S.C. §636(b)(1)(B) that the defendant's motion to dismiss, filing 29, be denied.

The parties are notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the district judge's adoption of findings in the recommendation.

Dated this 5th day of June, 2007.

BY THE COURT:

s/ David L. Piester

David L. Piester
United States Magistrate Judge

24